IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| SOKHEN CHAO, | ) | Civil No.  2:04-CV-1047 BSJ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| PRUDENTIAL FINANCIAL or the | ) | |
| PRUDENTIAL INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

```
┌─────────────────────────────────┐
│              FILED              │
│   CLERK, U.S. DISTRICT COURT    │
│    August 2, 2006 (11:17am)     │
│       DISTRICT OF UTAH          │
└─────────────────────────────────┘
```

\* \* \* \* \* \* \* \* \*

Plaintiff Sokhen Chao ("Chao") filed her Complaint in this matter on November 12,

2004, claiming that defendant Prudential Insurance Company of America ("Prudential")

arbitrarily and capriciously denied her long-term disability benefits that she was entitled to under

the disability benefits plan she participated in as an employee of Varian Medical Systems.  Chao

and Prudential have filed cross-motions for summary judgment.[1]  Prudential seeks summary

judgment in its favor on all of Chao's claims, while Chao asks the court to find that Prudential's

decision regarding her disability benefits was arbitrary and capricious and to grant her long-term

disability benefits retroactive to September 13, 2001.

The court held a hearing on the parties' cross-motions for summary judgment on April 25,

2006.  At the hearing, Chao was represented by Loren Lambert of Arrow Legal Solutions Group,

---

[1]In response to Prudential's Summary Judgment Motion, Chao filed her Motion for Decision on the Record and Memorandum in Response to Motion for Summary Judgment and in Support of Counter Motion for Judgment on the Record (dkt. nos. 48, 50-51).  During a hearing on April 25, 2006, Chao's counsel indicated to the court that Chao's Motion for Decision was essentially a cross-motion for summary judgment.  (Transcript of Hearing, dated April 25, 2006, at 17:10-16.)  Prudential's Summary Judgment Motion and Chao's Motion for Decision will therefore be referred to herein as cross-motions for summary judgment.

PC, and Prudential was represented by Scott M. Petersen and David N. Kelley of Fabian &

Clendenin.  After hearing the parties' respective arguments, the court took the motions under

advisement.  The court has carefully considered the parties' arguments, motions and memoranda,

the administrative record, and the law and facts relevant to the parties' motions.  Now being fully

advised, the court enters the following Memorandum Opinion & Order granting Prudential's

Summary Judgment Motion and denying Chao's Motion for Decision.

## I.  BACKGROUND

As set forth in the parties' supporting memoranda for their cross-motions for summary

judgment and in the administrative record, the following material facts are not in dispute.

Chao was employed by Varian Medical Systems as a Hi Voltage Tank Operator and a

Production Operator I.  Chao's job involved the performance of routine and repetitive

manufacturing, assembly and maintenance operations.  As part of her job, Chao was required to

load tanks with x-ray tubes that weighed between three and fifteen pounds, approximately ten to

twelve times per day.

Chao participated in the Prudential Disability Benefits program (the "Plan") that was

offered to her as an employee of Varian Medical Systems.  The Plan is governed by the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (2000).

Prudential acts as both the insurer and administrator of the Plan.

Under the Plan, benefits are payable for the period of a participant's "Total Disability,"

which the Plan defines as follows:

"Total Disability" exists when Prudential determines that all of these conditions
are met:

      (1)      Due to Sickness or accidental injury, both of these are true:

              (a)      You are not able to perform, for wage or profit, the material and substantial duties of your occupation.

              (b)      After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.
. . . .

      (2)      You are not working at any job for wage or profit.

      (3)      You are under the regular care of a Doctor.[2]

This section of the Plan expressly grants Prudential the authority and discretion to determine whether an insured meets the requirements for "Total Disability" and thus whether an insured is eligible for benefits.

Chao stopped working for Varian Medical Systems on or around February 27, 2001, and in early March of 2001, Chao submitted a claim for disability benefits to Prudential, which sought benefits starting on March 1, 2001.[3]  An Attending Physician's Statement prepared by Chao's family practitioner, Dr. Derek Muse, was submitted along with Chao's claim.[4]  Dr. Muse's Statement indicated a diagnosis of "Back pain" and provided that Chao was unable to work due

---

[2]("Disability Benefits — Varian Medical Systems, Inc." at 9 [PRU-0492], a copy of which is annexed as Exhibit "C" to the Affidavit of Laura Hannan Identifying the Claim File, filed March 30, 2006 (dkt. nos. 45 & 46) ("Hannan Aff.").)  The Hannan Affidavit authenticates a copy of Prudential's claim file concerning Chao's claim for disability benefits in this case consisting of annexed pages numbered PRU-0001 through PRU-0505.  (Hannan Aff. at 2 ¶ 4 & Exhibits "A," "B" & "C".)  Exhibit "B" to the Hannan Affidavit is the Affidavit of Edith Ewing Identifying the Applicable Disability Policy, dated March 30, 2006.  The Ewing Affidavit identifies pages PRU-0447 through PRU-0459 and PRU-0483 through PRU-0505 as "a true and correct copy of the contractual documents pertaining to Long Term Disability coverage in effect for employees of Varian Medical Systems on March 1, 2001, the time of Plaintiff's initial disability."  (Exhibit "B" to Hannan Aff. at 2 ¶ 3.)

      Reference to Prudential's claim file record in this opinion is made by citation to page numbers (**"PRU-0000"**) in the copy annexed to the Hannan Affidavit.

[3]("Employee's Statement of Claim," PRU-0477.)

[4](PRU-0478.)

to worsening chronic back pain.

In investigating Chao's claim, Prudential spoke to Chao and evaluated medical records from Dr. Muse.  On April 12, 2001, Prudential notified Chao in a letter that her request for disability benefits had been approved for the period of March 1, 2001 through March 21, 2001, but that the medical documentation did not support her total disability claim beyond March 21, 2001.[5]

On or around June 6, 2001, Chao submitted another written claim for benefits, which Prudential treated as an appeal of its decision regarding Chao's eligibility for disability benefits.[6] A second Attending Physician Statement by Dr. Muse was submitted with Chao's June 2001 claim.[7]  Dr. Muse's Statement indicated, among other things, that Chao's symptoms first appeared in 1996 and that Chao had last visited Dr. Muse on May 17, 2001.  Dr. Muse's Statement further reported that Chao was unable to stand, sit or bend, but that Chao should be able to return to work on or about September 26, 2001.  A letter from Chao describing her back pain was also submitted to, and considered by, Prudential.[8]

Prudential also requested, obtained and evaluated additional medical records relating to Chao,[9] including medical records from Dr. Muse and Dr. Jeffrey G. Randle, a physician to whom Dr. Muse had referred Chao.[10]  In Dr. Randle's report of his May 3, 2001 examination of Chao,

---

[5](PRU-0045.)

[6](PRU–0089; PRU-0043.)

[7](PRU-0090.)

[8](PRU-0088.)

[9](PRU-0460.)

[10](PRU-0461 through PRU-0469.)

Dr. Randle indicated that Chao had reported a five-year history of shoulder blade pain and

described his physical examination of Chao as follows:

> This is a healthy appearing female in no distress.  There is no atrophy noted about the
> muscles of the scapula, neck, or upper extremities.  She has normal scapulothoracic range
> of motion and active abduction is full and pain free from 0-180 degrees.  She has two
> areas of tenderness along the inferiomedial border of the scapula, more so on the left than
> on the right.  No tenderness to palpation along the cervicothoracic spine or along the
> transverse process rib junctures over the cervicothoracic spine on either side.  She has no
> scapular winging.  Pinprick sensation is intact in the C4-T1 dermatomes bilaterally.
> Strength is 5-/5 in the bilateral deltoids, biceps, triceps, wrist extensors, finger flexors,
> and interossei.  Having the patient bend over at the waist caused a complaint of increased
> tightness between the shoulder blades as does attempting to adduct the shoulder blades.[11]

In a letter dated May 3, 2001 from Dr. Randle to Dr. Muse, which Prudential reviewed, Dr.

Randle indicated that Chao "has had an essentially negative work up for any scapular problems . .

. ."  Dr. Randle further indicated that although Chao's CT scan revealed bilateral nonunion

fractures of the first ribs and left second rib fractures, she had "no tenderness to palpation over

these areas on examination today," and that the only areas of tenderness that he elicited were

"along the inferomedial scapular border."[12]

In a follow-up examination on June 8, 2001, Dr. Randle noted that Chao complained of

"tightness between the bilateral shoulder blades," occasional dizziness and and "tightness in her

bilateral lower extremities," and that she experienced "tenderness to palpation along the

anteromedial border of the scapulae on the bilateral sides," but with normal range of motion.[13]

Prudential also reviewed medical reports from Dr. Max Lundberg, which indicated,

---

[11](PRU-0466.)

[12](PRU-0382.)

[13](PRU-0468.)

among other things, that medical examinations of Chao revealed evidence of old rib fractures.[14]

Dr. Lundberg opined that "[t]he physical activity of her work coupled with" mechanical changes

resulting from her old rib fractures "probably causes the pain that she reports."[15]  Dr. Lundberg

noted that Chao appeared to be in "no acute distress," and while he indicated that there was some

abnormality and reduced flexion in Chao's lumbar spine, he suggested that a program of physical

therapy "could help" lessen Chao's pain.

After considering the additional medical reports and information relating to Chao,

Prudential determined that there was not sufficient evidence of a continuous period of Total

Disability related to Chao's reported symptoms that would have prevented her from performing

the essential duties of her job, and upheld its prior decision to terminate her disability benefits as

of March 22, 2001.[16]

In October of 2001, Varian Medical Systems submitted a letter to Prudential on Chao's

behalf,[17] indicating that representatives of Varian Medical Systems believed that Chao met the

Plan's requirements for Total Disability and asked Prudential to reconsider its decision regarding

Chao's claim.  Prudential treated this request as Chao's second appeal of its decision regarding

her disability benefits.[18]

In October of 2001,  Prudential also received another Attending Physician Statement

---

[14](PRU-385 through PRU-0389; PRU-0417 through PRU-419.)

[15](PRU-0386.)

[16](PRU-0043.)

[17](PRU-0091.)

[18](PRU-0040.)

signed by Dr. Muse, which, like the statement that he submitted with Chao's appeal in June of 2001, reported that Chao's last visit to Dr. Muse was on May 17, 2001 and that she was unable to stand, sit or bend.[19]  Dr. Muse also opined that Chao's clinical diagnosis was chronic intrascapular pain and that she was completely disabled.

Prudential observed that Dr. Muse's statement "did not seem to provide new information" regarding Chao's condition,[20] and notified Chao that it would begin reevaluating her claim for benefits upon receiving additional medical information to support her claim.[21]

On or around April 1, 2002, Varian Medical Systems again asked Prudential to reconsider Chao's disability claim and submitted additional information and medical records relating to Chao as Chao's "third appeal."[22]  Among the additional information that was provided to Prudential was a Functional Capacity Evaluation ("FCE") of Chao that was conducted by Jaren Cooper in September of 2001.[23]  The FCE noted that Chao reported a gradual onset of increased pain over the previous five to six years and that Chao's primary complaint was of bilateral shoulder blade pain on the medial border.  Mr. Cooper's evaluation indicated that Chao was observed moving and fidgeting to apparently alleviate her pain and that Chao perceived herself to be very disabled.  Mr. Cooper's testing revealed that Chao could lift between ten and twenty-five pounds in various tests, could push up to sixteen pounds and could pull up to twenty-one pounds.

---

[19](PRU-0427 through PRU-0434.)

[20](PRU-0007.)

[21](PRU-0039.)

[22](PRU-0213.)

[23](PRU-0375 through PRU-0378.)

A letter dated March 1, 2002 from Dr. Muse was also among the documents submitted to Prudential.[24]  Dr. Muse's letter reported that Chao had first seen Dr. Muse for chronic back pain in January of 1998 and that he had never observed Chao to be able to sit still or sit up completely straight due to her back pain.  Dr. Muse indicated that extensive evaluation of Chao had failed to reveal an etiology for the patient's symptoms and that:

> T-spine films, CXR, CT of the chest, MRI of the thoracic spine and brain and whole body bone scan were normal.  Stress ECHO and Stress Cardiolite were unremarkable.  EGD was non-diagnostic.  ANA, Rheumatoid Factor, ESR, B-12 level, SPEP, CBC, CHEM-20 have all been unremarkable.  Evaluations by orthopedics, rheumatology and physiatry have all been non-diagnostic except for the suggestions of myofascial pain syndrome or fasciitis.

Also among the documents submitted to Prudential were records from Chao's several medical visits with Dr. Richard Rosenthal of the Origin Pain & Spine Center.[25]  In a report on Chao's visit on February 5, 2002, Dr. Rosenthal indicated, *inter alia*, that there were no "Yellow Flags for prolonged functional impairment."[26]  In a report dated May 24, 2002, Dr. Rosenthal also indicated that although Chao still had pain with activity, the pain had "been relieved enough to return to work after being off for one year."[27]

In June of 2002, Prudential notified Chao that it had completed its review of her disability claim and that it was upholding its decision to terminate her disability benefits as of March 22,

---

[24](PRU-0133.)

[25](PRU-0095 through PRU-0107.)

[26](PRU-0095.)

[27](PRU-0106.)

2001.[28]  Prudential outlined its reasoning and indicated that after a thorough review of the

additional medical documentation it had determined that the medical records did not support an

impairment that would prevent her from performing the material and substantial duties of her

occupation.

On or around July 15, 2002, Prudential received additional medical records relating to

Chao's condition from Dr. Brian G. Drage, a family practitioner at Highland Family Practice.[29]

Although Dr. Drage's letter indicated that Chao had been re-evaluated on July 2, 2002, the letter

was nearly identical to the March 1, 2002 letter Prudential received from Dr. Muse.  Prudential

wrote to Chao, inquiring whether the submission of the Drage documentation was "to be

reviewed for an appeal of your claim for Short Term Disability benefits."[30]

In September of 2002, Prudential arranged for Dr. Patrick M. Foye of the University of

Medicine and Dentistry of New Jersey to review Chao's medical file.[31]  Dr. Foye has lectured and

written about Reflex Sympathetic Dystrophy and Complex Regional Pain Syndrome and

considers himself to have expertise in these areas.  After reviewing the records that Prudential

provided to him, Dr. Foye concluded that despite the extensive testing that had been performed to

determine the cause of Chao's pain, there was nothing in the medical records that supported an

impairment that would be expected to keep her from performing the material and substantial

---

[28](PRU-0037.)

[29](PRU-186 through PRU-0187; PRU-263 through PRU-265.)

[30](PRU-0262.)

[31](PRU-0033.)

duties of her occupation.[32]

Based on its review of Chao's additional medical information and its reliance on Dr. Foye's opinion, Prudential again affirmed its decision to terminate Chao's disability benefits as of March 22, 2001, rejecting Chao's "third appeal," and it outlined the reasoning for its decision in a November 14, 2002 letter to Chao.[33]

Sometime thereafter, however, Prudential determined that there was not significant evidence from the period of March 22, 2001 through September 12, 2001, the day after Chao's Functional Capacity Evaluation was performed, that showed that Chao could work.  Prudential therefore extended Chao's benefits through September 12, 2001.[34]

Prudential advised Chao by letter dated June 7, 2003 that if she wished to pursue her claim for benefits beyond September 12, 2001, she should submit "additional documentation regarding your condition and treatment."[35]

In June of 2003, Claims Management, Inc. ("CMI"), acting on Chao's behalf, asked Prudential to conduct another review of Chao's disability claim and submitted additional information relating to Chao.[36]  Among the documents submitted to Prudential were medical records from Dr. Dennis D. Thoen.  In a report dated January 6, 2003,[37] Dr. Thoen indicated that Chao had excellent strength and normal muscle bulk and tone.   Dr. Thoen noted that a prior CT

---

[32](PRU-0240 through PRU-0242.)

[33](PRU-0030 through PRU-0032.)

[34](PRU-0014; PRU-0028.)

[35](PRU-0026.)

[36](PRU-0193 through PRU-0206.)

[37](PRU-0172 through PRU-0175.)

of Chao's chest showed old rib fractures and that she had a very stiff spine with limited range of motion, and experienced paraspinous muscle and occipital nerve tenderness, "along with firm, tender, 'knotted' cervical paraspinous and trapezius muscles bilaterally."[38]  In his report, Dr. Thoen suggested that Chao attend physical therapy, take daily forty minute walks, and take ibuprofen instead of Lortab.[39]

After receiving Dr. Thoen's medical records, Prudential arranged for Dr. Foye to perform a second review of Chao's medical file.  After reviewing the additional information that he received from Prudential, Dr. Foye noted that the additional records were similar in many ways to the records that he had previously reviewed.  Dr. Foye again opined that the records did not document a specific clinical diagnosis that would be expected to prevent Chao from performing her occupation.[40]

In February of 2004, Prudential notified Chao by letter that it would not extend her disability benefits beyond September 12, 2001 because it had determined that the medical documentation relating to her condition did not support a physical impairment that would prevent her from performing her occupation, including the lifting required to load and unload the x-ray tubes weighing between three and fifteen pounds.[41]

Chao filed the Complaint in this matter on November 12, 2004, appealing Prudential's decision to deny her disability benefits beyond September 12, 2001.

---

[38](PRU-0175.)

[39](*Id.*)

[40](PRU-0048 through PRU-0052.)

[41](PRU-0025.)

11

## II.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

Both parties have moved for summary judgment and claim that they are entitled to judgment as a matter of law.  The parties agree that the appropriate standard of review to be applied in this case is the arbitrary and capricious standard.  The parties, however, dispute whether Dr. Foye's review of Chao's medical file constitutes an independent review and how Dr. Foye's opinion should impact the amount of deference that the court gives Prudential's decision under the arbitrary and capricious standard.  The parties also dispute whether there is substantial evidence in the administrative record to support Prudential's decision regarding Chao's disability benefits.

### A.  STANDARD OF REVIEW

ERISA itself does not specify the standard of review to be applied when a denial of benefits is challenged.  The United States Supreme Court, however, has held that a denial of benefits challenged under ERISA "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see Fought v. UNUM Life Insurance Co. of America*, 379 F.3d 997, 1002-03 (10th Cir. 2004).  The parties do not dispute that this case is governed by ERISA and that the Plan expressly gives Prudential the discretion to determine a claimant's eligibility for benefits. The court, therefore, must determine whether Prudential's decision regarding Chao's disability benefits was arbitrary and capricious, not whether in the court's view, Chao was entitled to disability benefits beyond those that Chao received.  In reviewing Prudential's decision under the arbitrary and capricious standard, the court is limited to the administrative record – the evidence

12

that Prudential considered before making its decision regarding Chao's disability benefits. *Allison v. UNUM Life Insurance Co.*, 381 F.3d 1015, 1021 (10th Cir. 2004).

The parties also do not dispute that Prudential operates under an inherent conflict of interest because it acts as both the administrator and insurer of the Plan.  The court, therefore, must apply the arbitrary and capricious standard, but because of Prudential's conflict of interest, the court must also undertake a "'sliding scale' analysis" where the degree of deference accorded to Prudential's decision regarding Chao's claim "is inversely related to the 'seriousness of the conflict.'"  *Allison*, 381 F.3d at 1021 (quoting *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996)); *see Fought*, 379 F.3d at 1003-04, 1006-07.

In *Fought*, the Tenth Circuit established a framework for determining the effect of a conflict of interest on the district court's review under the arbitrary and capricious standard of review and addressed the question of "*how much* less deference" a reviewing court should afford under the sliding scale analysis.  379 F.3d at 1004.  *Fought* provides that where the administrator operates under an inherent conflict of interest, such as acting as both the insurer and administrator of a benefits plan, the court should apply a "more searching and less deferential standard of review" in light of the conflict of interest.  379 F.3d at 1006, 1008.  Under this less deferential standard, the administrator bears the burden of demonstrating "that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence."  *Fought*, 379 F.3d at 1006.  *Fought* further instructs that where the administrator operates under an inherent conflict of interest, "[t]he district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted

by the conflict of interest."  *Id.*

Both parties argue that under *Fought*, an administrator's conflict of interest may be rebutted where the administrator engages an independent medical evaluation.  Prudential argues that its reliance on the opinion of Dr. Foye, an outside, independent expert, neutralized any presumed conflict of interest and that the court should therefore apply the full measure of deference under the arbitrary and capricious standard of review.  Chao, on the other hand, argues that Dr. Foye's review of Chao's medical file was not an independent medical evaluation and that his opinion does not rebut Prudential's conflict of interest.

While the court will address the issue of Dr. Foye's independence below, the court notes that although *Fought* provides that "'[s]eeking independent expert advice is evidence of a thorough investigation'" and that "independent medical examinations are often helpful," the court specifically indicated that such examinations are not required and did not provide that an independent evaluation eliminates the need for the "more searching and less deferential" arbitrary and capricious standard of review described in *Fought*.  379 F.3d at 1015 (quoting *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998)).  Therefore, even if Dr. Foye's opinion is considered independent, the court is not persuaded that his evaluation of Chao's claim neutralizes Prudential's presumed conflict of interest, or that the court should apply the full measure of deference under the arbitrary and capricious standard to Prudential's decision, as it argues.  Instead, the court has taken a hard look to determine whether Prudential has demonstrated that its interpretation of the terms of the Plan was reasonable and that its application of those terms to Chao was supported by substantial evidence in the administrative record.

## B. BENEFITS DETERMINATION

Under the Plan, Prudential has the authority and discretion to determine whether, and to what extent, Chao is eligible for disability benefits.  In this case, Prudential repeatedly reviewed Chao's claim.  Prudential initially granted Chao disability benefits for the period of March 1st through March 21st of 2001 and later extended Chao's benefits through September 12, 2001.  Prudential, however, consistently determined that Chao's records did not support an impairment that would prevent her from performing the material and substantial duties of her occupation beyond that date.  In their cross-motions for summary judgment, the parties dispute whether Prudential's decision is supported by substantial evidence in the administrative record.

Chao argues that Prudential's decision regarding her disability benefits was arbitrary and capricious.  One of Chao's main contentions with Prudential's decision is that Dr. Foye's opinion, on which it relied in coming to its decision, was not independent and was based on his biased and selective review of the record.  The record, however, does not support Chao's assertions.

The court is not persuaded that Dr. Foye's evaluation of Chao was not independent.  Dr. Foye, an Assistant Professor of Physical Medicine & Rehabilitation for the University of Medicine and Dentistry of New Jersey, is not an employee of Prudential, is not entitled to any employee benefits from Prudential, and does not work full-time or exclusively for Prudential.  Instead, Dr. Foye has contracted with Prudential to provide consulting services pertaining to the case review of disability claims.  Under his agreement with Prudential, Dr. Foye is generally not to exceed ten hours of consultation per week for Prudential, unless otherwise specially authorized by Prudential, and is responsible for maintaining his own medical malpractice and general liability insurance policies.  Moreover, the compensation that Prudential provides Dr. Foye for

15

medical record evaluations, $300.00 per hour, does not seem unreasonable given Dr. Foye's profession and the service he was engaged to provide Prudential.

The court also does not agree with Chao's assertion that Dr. Foye's opinions should be disregarded because he did not consult her treating physicians, did not examine her, and did not evaluate whether the records indicating that she had old rib fractures could be the cause of her pain.  As Prudential argues, Dr. Foye's purpose was not to diagnose Chao, but was to review her existing medical records to determine if there was evidence supporting an impairment that would be expected to prevent Chao from performing her job.

The record also does not support Chao's assertions that Dr. Foye formed his opinions simply to conform to Prudential's conclusions or that Dr. Foye's opinions were based on his biased review of her file.  Although Dr. Foye did not have Chao's complete file at the time of his first review, Chao acknowledges that Prudential provided Dr. Foye with Chao's entire file for his second review.  And contrary to Chao's claim that Dr. Foye disregarded the additional information that was provided to him at the time of his second review of her claim, Dr. Foye's second opinion specifically describes the additional records he received from Prudential and summarizes the medical findings contained in such records.  Dr. Foye's opinions show that he considered the records in Chao's file, including the opinions of Dr. Muse and Dr. Drage that she was disabled, and formed his own conclusion based on his evaluation of the information contained therein.  For these reasons, the court concludes that Dr. Foye's opinions were based on his independent review of Chao's claim.

As discussed above, however, the court's determination that Dr. Foye's evaluation of Chao's claim was independent does not mean that the court has disregarded Prudential's conflict

of interest.  While the court considers Dr. Foye's independent examination of Chao's file as helpful and as evidence of Prudential's thorough investigation of Chao's claim, the court has not deemed Dr. Foye's opinions to be sufficient to overcome Prudential's admitted conflict of interest as both the insurer and administrator of the Plan.  Instead, the court has applied the more searching and less deferential version of the arbitrary and capricious standard, under which Prudential had the burden of demonstrating that its interpretation of the terms of the Plan was reasonable and that its decision regarding Chao's benefits was supported by substantial evidence.

Prudential has met its burden.  First, as the parties admit, the Plan expressly gives Prudential the authority to determine the sufficiency of the proof of a disability.  The record in this case demonstrates that Prudential conducted multiple reviews of Chao's claim, evaluated extensive information regarding Chao's condition, and undertook a good faith review of Chao's claim, but determined that the evidence was insufficient to establish that she was not able to perform the duties of her occupation.

The administrative record in this case also shows that Prudential's ultimate decision that Chao was not precluded from performing the duties of her occupation was supported by substantial evidence.  "'Substantial evidence' is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].'  Substantial evidence requires 'more than a scintilla but less than a preponderance.'" *Sandoval v. Aetna Life & Casualty Insurance Co.*, 967 F.2d 377, 382 (10th Cir. 1992) (quoting *Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir. 1991).

In addition to Dr. Foye's opinions, which support Prudential's decision, the record also shows that several consultants who evaluated Chao documented normal physical exam findings

17

and that Chao's test results generally did not reveal a cause for her reported pain. For instance, while Dr. Muse and Dr. Drage noted that Chao was constantly adjusting to relieve her pain and while Dr. Muse indicated that Chao's constant pain had existed for at least three years, her other treating physicians, such as Dr. Randle, Dr. Lundberg, and Dr. Thoen, all reported that Chao appeared healthy and to be in no distress. Several of Chao's treating physicians also described Chao as having normal strength and normal range of motion. For example, after consulting with Chao on February of 2001, Dr. Lundberg reported that her range of motion in the cervical spine was normal, that her strength was normal on confrontation, and that her range of motion was normal in the joints of the upper and lower extremities. Similarly, Dr. Randle noted in May of 2001 that Chao had "normal scapulothoracic range of motion and active abduction is full and pain free from 0-180 degrees" and that there was "no atrophy noted about the muscles of the scapula, neck, or upper extremities." Also, although Dr. Thoen noted in January of 2003 that Chao had a very stiff spine with limited range of motion, he also described her as having excellent strength and normal muscle bulk and tone.

There is also significant evidence in the record that Chao was both able and encouraged to engage in physical activity. For instance, during the FCE in September of 2001, Chao exhibited that she could lift as much as twenty-five pounds from floor to waist and ten to fifteen pounds under other conditions. Additionally, some of Chao's treating physicians recommended that she engage in physical activity. In February of 2001, Dr. Lundberg indicated that physical therapy could benefit Chao and relieve her pain. Likewise, in January of 2003, Dr. Thoen referred Chao to intensive physical therapy, suggested that she walk for forty minutes a day, and recommended that she take ibuprofen, not Lortab, for discomfort.

18

The record also reveals that Chao's test results were essentially negative.  For example, Dr. Randle found that Chao had an essentially negative work up for any scapular problems and Dr. Rosenthal indicated after examining her that there were no "Yellow Flags" for prolonged functional impairment.  Even Dr. Muse indicated that extensive evaluation of Chao had failed to reveal an etiology for her symptoms.  And while two of Chao's treating physicians, Dr. Muse and Dr. Drage, opined that she was disabled from any occupation, Prudential was not required to accord special deference to their opinions.  *Black & Decker Disability Plan*, 538 U.S. 822, 831 (2003).

### III.  CONCLUSION

There is no dispute that Chao suffers from upper back and shoulder pain.

Not all of the evidence in the record supports Prudential's decision denying Chao's claim for disability benefits beyond September 12, 2001.

Nevertheless, this court must determine whether Prudential's decision regarding Chao's disability benefits was arbitrary and capricious, *not* whether in the court's view, Chao was entitled to disability benefits beyond those that she has already received.

Based upon its review of the entire administrative record in light of the applicable standard of review, the court concludes that Prudential has established that its decision was based on a reasonable interpretation of the Plan and was supported by substantial evidence in the record.  On that basis, the court grants Prudential's motion for summary judgment and denies Chao's motion for decision on the record.

For the reasons set forth above,

**IT IS ORDERED** that Prudential's Motion for Summary Judgment (dkt. no. 39) is